WO MGD

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

Eliseo Solis Haro,
Plaintiff,
v.
Charles L. Ryan, et al.,
Defendants.

No. CV 12-00612-TUC-CKJ

**ORDER**

Plaintiff Eliseo Solis Haro, who is currently confined in Arizona State Prison Complex (ASPC)-Tucson, brought this pro se civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 87.) Defendants Esparza and Mulcahey move for summary judgment and Plaintiff opposes.[1] (Docs. 117, 126.)

The Court will grant Defendants' Motion for Summary Judgment and terminate this action.

## I. Background

Plaintiff's Second Amended Complaint asserted claims against Arizona Department of Corrections (ADC) officers Sergeant L. Esparza and Correctional Officer (CO) III Mulcahey. Plaintiff alleged in Count III that he was placed in segregation

[1] On July 10, 2015, the Court issued the Notice required under *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), which informed Plaintiff of his obligation to respond to the Motion for Summary Judgment and the requirements under Federal Rule of Civil Procedure 56. (Doc. 119.)

detention at ASPC-Tucson for three months in 2010 and that Esparza and Mulcahey violated his Eighth Amendment rights while he was there. (Doc. 87 at 11.)[2]

Plaintiff claims that while he was housed in the Complex Detention Unit (CDU) from April 30 to June 4, 2010, Esparza housed him in a two-man cell which already had two inmates and so forced Plaintiff to sleep on the floor. (Doc. 87 at 16.) Plaintiff further alleged that while he was housed in the Cimarron Detention Unit ("Cimarron") from June 4 to July 13, 2010, Mulcahey forced him to sleep on the floor on a wet mattress soaked with sewage matter and he was exposed to spider bites. (*Id.*) Plaintiff claims that Esparza and Mulcahey were informed of these conditions but deliberately kept him in the conditions, in violation of his Eighth Amendment rights. Plaintiff alleges that he tried grieving the matter but "was deprived of pursuing grievance." (*Id.*) On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated a claim and directed Esparza and Mulcahey to answer Count III.[3] (Doc. 89.)

On July 7, 2015, Defendants Esparza and Mulcahey filed their Motion for Summary Judgment, arguing that Plaintiff did not exhaust his administrative remedies, that his claim is barred by the statute of limitations, and that he will be unable to raise a genuine issue of material fact. (Doc. 117 at 1.)

## II. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[3] In a September 15, 2014 Order, the Court granted summary judgment to another Defendant, Sergeant Rascon, on Plaintiff's retaliation claim in Count I. (Doc. 88.) Count II was dismissed on screening of Plaintiff's First Amended Complaint. (Doc. 8.)

believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Exhaustion

### A. Legal Standard

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534

U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### B. ADC Procedures for Exhaustion[4]

The ADC Department Order (DO) 802 entitled "Inmate Grievance System," governs the grievance procedure. (Doc. 118 ¶¶ 33, 147.) As part of orientation, inmates are instructed on how to use the grievance procedure. (*Id.* ¶ 36.) A copy of the grievance policy is available in the Inmate Resource Center in each prison facility and inmates may obtain grievance forms and assistance from their assigned CO III. (*Id.* ¶ 36.) Inmates

---

[4] The relevant facts are taken from Defendants' Statement of Facts (Doc. 118) and Plaintiff's Statement of Facts (Doc. 127). Plaintiff did not file a controverting statement of facts and so the Court will consider Defendants' facts undisputed unless it is apparent from one of Plaintiff's facts or evidence that there is a dispute.

may use the grievance process for "any aspect of institutional life or condition of confinement that directly and personally affects the inmate," but not for disciplinary or classification issues which have separate appeal processes. (*Id.* ¶¶ 33, 37, 107; Doc. 118-1 at 128 (DO 802.01-1.1.)

To initiate a grievance, an inmate must submit an informal complaint by inmate letter within ten workdays from the date of the action which caused the complaint. (Doc. 118 ¶ 110.) If the inmate's complaint cannot be resolved informally, the inmate may submit a formal grievance within five working days from receipt of the response. (*Id.*) The Deputy Warden answers the formal grievance, and if the inmate is not satisfied with that response, he may file a grievance appeal to the Warden within five working days of receipt of the response. (*Id.*) The inmate has five working days from receipt of that response to appeal to the ADC Director, which is the final stage of the ADC Inmate Grievance System. (*Id.*) Unless there is an extension of the time frames, "the expiration of any time limit for a response at any stage in the process shall entitle the inmate grievant to move to the next step in the process. Extension at any step in the grievance process shall not exceed 15 working days." (Doc. 127 at 24 ¶ 34; Doc. 128-1 at 49.)

**C. Plaintiff's Attempts to Exhaust**

**1. CDU**

According to Defendants, while Plaintiff was in the CDU from April 30 to June 4, 2010, he was assigned a bottom bunk, not the floor, in cell number C04-DU-B219B. (Doc. 118 ¶¶ 12-14; Doc. 118-1 at 17 (Inmate Record).) Defendants assert that a different inmate, Benitez, was assigned to the floor, as indicated by his cell number, C04-DU-B219F.[5] (Doc. 118 ¶¶ 12, 57.) Plaintiff contends that he was the person on the floor

[5] Defendants explain that the letter "B" at the end of Plaintiff's cell number refers to a "Bottom" bunk and that the "F" at the end of Benitez's cell numbers refers to "Floor." (Doc. 118 ¶ 11.)

and that the Inmate Record indicating he was assigned the bottom bunk was "fabricated in attempt to cover up the violations of constitutional magnitude."[6] (Doc. 126 at 8.)

Defendant Sergeant Esparza served as the CDU supervisor during the time Plaintiff was in the CDU, and CO III Schmidt was the Grievance Coordinator. (Doc. 118 at ¶¶ 3, 30.) Esparza asserts that he did not assign or require Plaintiff to occupy a bed space on the floor, that he did not receive any complaints from Plaintiff while he was in the CDU, and he did not receive any reports from his subordinates about Plaintiff being exposed to unsafe, unhealthy, or unsanitary conditions while he was in the CDU. (*Id.* ¶¶ 13, 29.) Plaintiff responds that he "addressed" Esparza several times and notified CO II officers on a daily basis so that they "could address or call Sgt. Esparza concerning overcrowding, hostil[e] living circumstance[es], and being forced-subjected to sleeping on floor."[7] (Doc. 127 at 8 ¶ 11.)

Plaintiff did send several inmate letters to CO III Schmidt while he was in the CDU, but only one related to the conditions in the CDU. (*See* Doc. 118 ¶¶ 44-51.) In a May 10, 2010 Inmate Letter, Plaintiff requested to be moved from his cell because he is "not getting along with the inmates in here and there is a lot of tension[.]" (Doc. 128-5 at 5.) Plaintiff did not say that he was sleeping on the floor, but he requested "a cell where [he has] a bed to sit on [and] space[;] I am on the ground and I need a place to sit down to write or even just to sit. I need to please be moved as soon as possible." (*Id.*) The response states, "will be considered as space allows." (*Id.*)

---

[6] This particular dispute is found in Plaintiff's Response, which does not cite to any admissible evidence. Plaintiff's Declaration merely says that ADC "has falsified documentation of living placement in attempts to cover up the wrongful, negligent or deliberate overcrowding, forceful floor subjection to unsanitary conditions." (Doc. 128 at 16.)

[7] This dispute is found in Plaintiff's Statement of Facts, which does not refer to any relevant, admissible evidence, such as a Declaration by Plaintiff, and only cites to the inmate grievance procedure found in DO 802.

On May 23, 2010, Plaintiff submitted an "informal grievance resolution attempt" asking why he was housed in a two-man cell with two other people and requesting Schmidt's phone number so his family and attorney could contact Schmidt.[8] (Doc. 118 ¶ 46.) Schmidt responded that due to overcrowding, a third bed space was allowed in detention units but that inmates were moved within detention units as space became available to alleviate the crowding situation.[9] (*Id.*; Doc. 118-1 at 39.) Plaintiff says he "never received a formal response to his informal resolution attempt dated May 23, 2010 on behalf of [] CO III Schmidt." (Doc. 127 at 15 ¶ 22.) Plaintiff did not submit any other correspondence to Schmidt or a formal grievance about being housed with two other inmates in a two-person cell while in the CDU. (Doc. 118 ¶ 47.) Schmidt checked the "currently available CDU grievance records and confirmed that that those records contain no indication that [Plaintiff] submitted any formal grievances at CDU in 2010." (*Id.* ¶ 43.)

**2. Cimarron**

Defendants assert that while Plaintiff was in Cimarron from June 4 to July 13, 2010, he was assigned a top bunk in cell number C13-CB2C20T and inmate Ceja was assigned to the floor in C13-CB2C20F. (Doc. 118 ¶¶ 79, 83-84.) Plaintiff, though, contends that he slept on the floor at Cimarron. (*See, e.g.*, Doc. 126 at 6.) Defendant

[8] Defendants state that they do not have a copy of Plaintiff's May 23, 2010 informal grievance. (Doc. 118 ¶ 46.) Defendants are apparently surmising what the informal grievance said based on an "electronic original" that Schmidt says he located of his response to a May 23, 2010 informal resolution from Plaintiff. (*Id.*; Doc. 118-1 at 24 ¶ 18.)

[9] Schmidt states that it was his custom to respond to inmate letters and informal grievances within a couple of days and so he would have sent his response to Plaintiff by May 25. (Doc. 118 ¶ 46.) Plaintiff contends that the document Defendants submitted as Schmidt's response to his informal grievance was "fabricated" because it has no signature or date and that he never received the response. (Doc. 126 at 8; Doc. 127 at 13-14 ¶ 21.) The record here is confusing because Defendants produced an undated, unsigned "electronic original" response to an informal grievance, but neither party has produced the grievance, and so the Court is left to guess at what the informal grievance actually said.

Mulcahey, a CO III at Cimarron, was Plaintiff's caseworker and the initial point of contact for Plaintiff in resolving his complaints or grievances. (Doc. 118 ¶¶ 74-75.)

Plaintiff submitted an Inmate Letter dated June 7, 2010, stating that he had started an "informal" at the CDU because "of three people being housed in cell when in fact these cells are not registered or made for three people." (Doc. 118 ¶ 86; Doc. 128-5 at 6.) Plaintiff wrote he sleeps on the floor and that he had "already caught a very big spider" and "almost got bit while on [the] floor." (Doc. 128-5 at 6.) Plaintiff said spiders come in from underneath the doors and he gave a spider to the morning shift on June 5 and asked for attention, but nothing was done. (*Id.*) Plaintiff wrote that he is "still exposed to floor and that means exposed to spiders as well." (*Id.*) Plaintiff said that "because of the continuation of this violation," he is compelled to start the grievance process and requested a copy of his letter with the CO III's response "and the grievance forms as well." (*Id.*) Plaintiff noted that he had discussed his issue with CO II Torres A. and "CO III Schmidt at Complex C.D.U." (*Id.*) Mulcahey responded to Plaintiff's Inmate Letter on June 8, stating that he was returning the Inmate Letter as unprocessed and that the grievance must be completed in the unit where it began, which Plaintiff had indicated was the CDU. (Doc. 118 ¶ 87; Doc. 118-1 at 67.)

Because Plaintiff was assigned to the top bunk in Cimarron, Mulcahey states he had no reason to believe Plaintiff was referring to conditions in Cimarron. (Doc. 118-1 at 58 ¶ 17.) Mulcahey says he did not receive any follow-up correspondence from Plaintiff about being housed with two other people in a two-person cell, and Plaintiff did not advise Mulcahey that his Inmate Letter related to conditions at Cimarron. (*Id.* ¶ 18.)

The Grievance Coordinator for Cimarron, CO IV T. Bartuccio, maintains the records of all processed and unprocessed grievances at the unit. (Doc. 118 ¶ 113.) Bartuccio reviewed the grievance records for the period between June 4 and December 12, 2012 and found no records indicating that Plaintiff initiated "any proper grievances regarding either Esparza or Mulcahey or about the conditions of his 2010 confinement at the CDU and Cimarron Detention Unit." (*Id.* ¶ 118; Doc. 118-1 at 74 ¶ 21.)

Plaintiff did submit an Inmate Grievance on June 29, 2010, and he attached his June 7, 2010 Inmate Letter to CO III Mulcahey. (Doc. 118 ¶ 119; Doc. 118-1 at 96-97.) Plaintiff said in this grievance that he had presented an "informal" to Mulcahey "to resolve the issue of being 3 inmates housed in one cell plus 1 being on floor where I had already almost been bitten by a big spider at night which I was able to kill and gave the officers in hope that I would get housed in a cell off the floor as regulations state. I have had water as well enter underneath or under door just about every night and water gets all over cell and have many times brought it to the attention of officers and nothing has been done." (Doc. 118-1 at 96.) On July 12, 2012, Bartuccio returned the grievance to Plaintiff unprocessed because "the issue was addressed while at CDU [and] needed to be provided as part of this informal grievance process." (Doc. 118 ¶ 119; Doc. 118-1 at 96.) Bartuccio did not receive any further correspondence from Plaintiff "disputing the rationale for her returning his grievance unprocessed." (Doc. 118 ¶ 119; Doc. 118-1 at 74 ¶ 18.)

In Plaintiff's evidence is an Inmate Letter dated July 2, 2012, requesting grievance forms in order to pursue a grievance related to being left in a holding cage for an excessive amount of time at the Manzanita Unit. (Doc. 128-2 at 20.) Plaintiff wrote that CO III Schmidt never responded to Plaintiff's "informal" regarding this issue; he also wanted to know why he had not been "housed to a bunk since [he] ha[d] been here for about a little over a month on floor[.]" (*Id.*) There is no response written on this Inmate Letter. A July 6, 2010 Inmate Letter relates to a telephone call, which the morning shift told Plaintiff was scheduled for 5:30 p.m. that day, but that the afternoon shift told him was scheduled for another day. (Doc. 128-2 at 21.) Plaintiff wrote that he feels that this is retaliation because he submitted a grievance "against this CDU for the violation of housing me on floor and being exposed to water every night that comes in and gets on mattress." (*Id.*) There is no response on the Inmate Letter.

. . . .

. . . .

**3. Appeals to the ADC Director**

The ADC Central Office log of appeals to ADC Director Ryan is maintained by Cheryl Dossett, who reviewed the Grievance Appeal Log and Grievance Appeal files for non-medical, final grievance appeals filed by Plaintiff for the period beginning April 30, 2010 through June 30, 2015. (Doc. 118 ¶¶ 146, 154.) After reviewing the records, Dossett determined that Plaintiff did not file any final, non-medical grievance appeals to the Director during that time period "regarding Sergeant Esparza, CO III Mulcahey, or the conditions of his confinement in CDU or the Cimarron Detention Unit." (*Id.* ¶ 155; Doc. 118-1 at 7 ¶ 12.) Dossett states that on October 8, 2010, Director Ryan wrote to Plaintiff regarding an incident at the ASPC-Tucson Manzanita Unit on April 29, 2010, when Plaintiff was held in an outdoor holding enclosure beyond allowable time limits. (Doc. 118 ¶ 156; Doc. 118-1 at 7 ¶ 13.) Dossett states that there is no record of this particular grievance in the logs maintained for "Director-level grievance appeals." (*Id.*)

Plaintiff provided a copy of Director Ryan's October 8, 2010 Inmate Letter Response, in which Ryan wrote:

> I am in receipt of your inmate letter dated September 20, 2010 in which you have indicated that you are 'open to negotiations' regarding the violation of [ADC] policy that resulted in your detention in an outdoor holding enclosure beyond allowable time limits. I am not in a position to engage in any negotiation in this matter. In the event a matter is brought to me as a legal filing, the Attorney General's office will be the agency to respond. I do, however, want to advise you of the actions I did take upon learning of the violation of the holding enclosure policy outlined in Department Order (DO) 704, *Inmate Regulations*.
>
> Several ADC employees received suspensions without pay. These employees will have this discipline in their permanent personnel files, and any further policy violations will result in more severe action. While I do not condone disorderly conduct on the part of inmates, I equally do not knowingly condone ADC staff violating policy. These violations are not tolerated and will continue to be dealt with harshly. Moreover, all correctional staff has been instructed on the proper use of holding enclosures, and the requirement that policy be followed without exception.
>
> I am by this letter acknowledging your attempt to grieve this matter properly and it should have been processed accordingly. I do not dispute

> that your administrative remedy in this matter has been exhausted. I do not see any further remedial action that can be taken on the part of ADC beyond the discipline imposed upon the correctional employees involved. I believe this is a fair solution to this matter and in line with the violation committed by staff.
>
> It is my understanding that you were seen by our medical staff and that you fortunately did not suffer serious harm or illness. The situation is regrettable but in my opinion it is resolved at this time.

(Doc. 128-2 at 56 (emphasis in original).) Neither party provided a copy of the Inmate Letter to which Ryan was responding.

**D. Discussion**

Defendants presented evidence to the Court showing that administrative remedies were available and Plaintiff, too, cites to the administrative remedy procedures in DO 802. (Doc. 118 ¶¶ 33, 110, 147; Doc. 127 at 11-12 ¶¶ 17-20.) Defendants argue that Plaintiff failed to exhaust those administrative remedies regarding his conditions of confinement (Doc. 117 at 3), and Plaintiff responds that he "attempted [] numerous times to have proper attention given to his inmate letters and grievances but was tolled [sic] and deprived to proceed in procedures and to a minimal [sic] have his concerns acknowledged[.]" (Doc. 126 at 6.)

The PLRA requires a prisoner to exhaust only those administrative remedies that are available; thus, exhaustion is not required "when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (citing *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)). Improper screening of an inmate's grievance, failing to provide grievance forms, and providing inaccurate information to an inmate during the grievance process have been found to constitute circumstances rendering administrative remedies unavailable. *Sapp*, 623 F.3d at 822 (citing cases); *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (holding that if Plaintiff was unable to file grievance forms or if he was reliably informed that administrative remedies were not available, exhaustion is not required); *Brown*, 422 F.3d at 935.

Plaintiff contends that he sent multiple inmate letters and grievances "that CO III Schmidt did not properly proceed with," even though it was Schmidt's duty to notify supervisors and Esparza "of the conditions in violation[.]" (Doc. 126 at 7.)

The evidence reflects that Plaintiff possibly sent two Inmate Letters while housed in the CDU about the conditions of his confinement there. In his May 20, 2010 Inmate Letter to CO III Schmidt, Plaintiff asked to be moved from his cell because he was not getting along with the other inmates; he also requested "a cell where [he has] a bed to sit on [and] space[;] I am on the ground and I need a place to sit down to write or even just to sit." (Doc. 128-5 at 5.) (*Id.*) The response states, "will be considered as space allows." (*Id.*) Plaintiff does not say that he filed a grievance or any follow-up correspondence after receiving this response.

The evidence also reflects an Inmate Letter Response from Schmidt regarding Plaintiff's "informal resolution dated 5-23-2010," which questioned why Plaintiff was housed in a two-man cell with two other people. (Doc. 118-1 at 39.) Schmidt wrote that due to overcrowding, a third bed space was allowed in detention units but that inmates were moved within detention units as space became available to alleviate the crowding situation. (*Id.*) Neither party provided a copy of Plaintiff's May 23, 2010 "informal resolution," and Plaintiff says he "never received a formal response to his informal resolution attempt[.]" (Doc. 127 at 15 ¶ 22.) Plaintiff claims Schmidt's Inmate Letter Response was "fabricated," and so he "was deprived of [] correct grievance procedures." (Doc. 126 at 8.) Plaintiff contends that because CO III Schmidt "never answered back," he was deprived "of the opportunity to properly appeal or grieve to the highest level which is the director[']s level to complete the exhaustion requirement." (*Id.* at 10-11.) Neither party has introduced Plaintiff's informal resolution as evidence, and it is not clear why Plaintiff is saying the response from Schmidt was fabricated, as that is the only evidence in the record that there may have been an informal grievance from Plaintiff dated May 23, 2010.

Plaintiff does not say that he ever attempted to appeal Schmidt's response or that he ever filed a formal grievance. Plaintiff merely says that by not answering his May 23, 2010 informal grievance, Schmidt "deprived Plaintiff of the opportunity to properly appeal or grieve to the highest level[.]" (Doc. 126 at 10-11.) Even taking Plaintiff's assertion as true that Schmidt did not respond to an informal grievance, Plaintiff has cited the portion of DO 802 that allows an inmate to proceed with the grievance process in the absence of a response. (Doc. 127 at 24; Doc. 128-1 at 49 (DO 802.01-1.1).) Plaintiff does not explain why he did not proceed if, indeed, he did not receive a response to an informal grievance. Therefore, Plaintiff has failed to establish that administrative remedies were unavailable to Plaintiff while he was in the CDU.

Once Plaintiff was at the Cimarron Detention Unit, he sent an Inmate Letter on June 7, 2010 in which he wrote that he had started an "informal" at the CDU because "of three people being housed in cell when in fact these cells are not registered or made for three people." (Doc. 118 ¶ 86; Doc. 128-5 at 6.) Plaintiff also wrote about spiders coming in from under the door and he requested grievance forms. (Doc. 128-5 at 6.) Mulcahey responded on June 8 that he was returning the Inmate Letter as unprocessed, stating that the grievance must be completed in the unit where it began, which Plaintiff had indicated was the CDU. (Doc. 118 ¶ 87; Doc. 118-1 at 67.) Plaintiff did not send any follow-up correspondence to tell Mulcahey he was disputing the reason for returning his informal grievance or that his complaint related to conditions at Cimarron. (Doc. 118-1 at 58 ¶ 18.) Plaintiff does not explain why he did not dispute Mulcahey's response or why he did not file a formal grievance, but merely argues that because he eventually won his disciplinary ticket and should not have been in the detention units, his due process rights were violated. (Doc. 126 at 11-12.)

Plaintiff submitted an Inmate Grievance on June 29, 2010, stating that on June 7 he sent an informal to Mulcahey to "resolve the issue of being 3 inmates housed in one cell, plus being on floor where I had already almost been bitten by a big spider at night . . . . I have had water as well enter underneath or under door just about every night and

water gets all over cell and have many times brought it to the attention of officers and nothing has been done." (Doc. 118-1 at 96-97.) On July 12, 2012, Bartuccio returned the grievance to Plaintiff unprocessed because "the issue was addressed while at CDU [and] needed to be provided as part of this informal grievance process." (*Id.* at 96.) It is not clear why Bartuccio said Plaintiff's issue was addressed at the CDU when Plaintiff was writing in the present tense while he was housed in Cimarron. Nevertheless, Bartuccio says she did not receive any further correspondence from Plaintiff "disputing the rationale for her returning his grievance unprocessed" (Doc. 118 ¶ 119), and Plaintiff does not say he ever attempted to appeal Bartuccio's decision.

Plaintiff's Response relies primarily on Ryan's October 8, 2010 Inmate Letter Response, which Plaintiff argues is an admission by ADC that "the grievance procedures were not accordingly followed even thou[gh] should have processed accordingly and therefore supports Plaintiff's claims of depriving through grievance procedure by tolling and allowing Plaintiff the proper levels of procedures to able to [be] appeal to the highest level—director's level." (Doc. 126 at 9.)

Ryan's letter clearly addressed the issue of Plaintiff's detention in an outdoor holding enclosure beyond allowable time limits and clearly waived the exhaustion requirement as to that issue. Ryan says nothing in his letter about Plaintiff complaining about conditions in the CDU or Cimarron, and neither party has provided the letter from Plaintiff that prompted Ryan's response. Therefore, nothing in the record indicates that Ryan's letter was addressing both the policy violation that resulted in Plaintiff being held in an outdoor holding enclosure, as well as all of the subsequent events that resulted in Plaintiff being held in the CDU and Cimarron.

The only other evidence in the record are Plaintiff's conclusory assertions that he was somehow prevented from exhausting his administrative remedies, but he fails to provide any evidence that anyone prevented him from proceeding to the next level such as refusing to provide him with grievance or grievance appeal forms or threatening any

sort of retaliation. Accordingly, the Court finds that Plaintiff failed to exhaust his administrative remedies and will grant summary judgment to Defendants.[10]

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 117) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 25th day of September, 2015.

Cindy K. Jorgenson
United States District Judge

[10] Because the Court finds that Plaintiff failed to exhaust his administrative remedies, the Court need not consider Defendants' additional argument that Plaintiff's claims are barred by the statute of limitations.